IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
NO.: 4:12-CV-00289-D

| | |
|---|---|
| ADA GOODWIN, )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, Acting )<br>Commissioner of Social Security, )<br>)<br>Defendant )<br>_____ ) | **MEMORANDUM &**<br>**RECOMMENDATION** |

This matter is before the Court upon the parties' Motions for Judgment on the Pleadings. (DEs 19, 21). The time for filing any responses or replies has expired and, therefore, the motions are now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), they have been referred to the undersigned for the entry of a Memorandum and Recommendation. For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE 19) be granted, that Defendant's Motion for Judgment on the Pleadings (DE 21) be denied, and that the Defendant's final decision be vacated and remanded for further proceedings.

**I. STATEMENT OF THE CASE**

Plaintiff protectively filed for disability insurance benefits and supplemental security income on November 16, 2007, alleging a disability beginning on October 9, 2007. (Tr. 8–23). Her claim was denied initially and upon reconsideration. *Id*. A hearing was held before an Administrative Law Judge ("ALJ") via video-conference on April 22, 2010 and, in a decision dated August 25, 2011, the ALJ determined that Plaintiff was not disabled. *Id*. The Social Security Administration's Office of Disability Adjudication and Review Appeals Council ("AC")

denied Plaintiff's request for review on November 16, 2012, thus making the ALJ's decision the final decision in this matter. *Id.* at 1–6. Plaintiff appealed that decision to this Court on December 6, 2012 (DE 1).

## II. STANDARD OF REVIEW

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . .

42 U.S.C. § 405(g).

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." *Craig*, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

2

**III. ANALYSIS**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

*Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001).

The ALJ followed the sequential evaluation in this case. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her injury onset date, October 9, 2007. (Tr. 13). At step two, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus; hypertension; degenerative disc disease of the surgical spine with headaches, depression an anxiety. (*Id*). However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 14). Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform the light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), with limitations. (*Id.* at 13). These limitations include findings that Plaintiff is able to lift and/or carry twenty pounds occasionally and ten pounds frequently; able to stand and/or walk two to four hours in an eight hour day; able to sit six hours

3

in an eight hour day; able to frequently balance, stoop, kneel, crouch, push, and pull (with both upper and lower extremities); able to engage in frequent fine manipulation with upper left extremity; able to understand, remember and carry out frequent instructions; able to interact with coworkers and the public for casual, brief (15 minutes or less per interaction) periods; and has moderate restriction in the ability to maintain attention and concentration for sustained periods. (*Id.* at 15). Moderate is defined as more than a slight limitation in this area but the individual is still able to function satisfactorily. (*Id*). The ALJ also determined that Plaintiff was not capable of performing past relevant work. (*Id*. at 18). Considering Plaintiff's age, education, work history and RFC, the ALJ determined that there were a significant number of jobs in the national economy which Plaintiff was capable of performing. (*Id*). Accordingly, the ALJ found that Plaintiff had not been under a disability during the relevant time period. (*Id*. at 19).

Plaintiff's contends that the ALJ erred by assessing an RFC that is internally inconsistent and that fails to fairly set out all of her limitations. She further asserts that her subjective reports of pain were not properly considered and that the Defendant failed to satisfy its burden at Step Five.

   *A. The ALJ's findings as to Plaintiff's RFC*

At Step 4, the ALJ determines the claimant's RFC. This requires the ALJ to evaluate a claimant's ability to do sustained work-related physical and mental activity on a regular basis. In making this finding, the ALJ considers the functional limitations from medically-determinable impairments. Thus, when the medical evidence shows a limitation, the ALJ must factor that into the RFC assessment. This "assessment . . . provides a backdrop for the ALJ's evaluation[s] . . . and provides insight into [them]." *Worden v. Astrue*, 2012 WL 2919923, *5 (E.D.N.C. May 29,

4

2012), *Report and Recommendation Adopted by*, *Worden v. Astrue*, 2012 WL 2920289. The undersigned has reviewed the entire record, which shall now be summarized.

    *1. Plaintiff's testimony*

Plaintiff testified regarding her constant pain, in her neck, shoulders and lower back. (Tr, 31–32). She stated that she has had injections, physical therapy and prescription medication to manage the pain. (*Id*. at 32). She stated that sitting with feet flat on the floor gives her difficulty in her shoulders, the right more so than the left. (*Id*. at 33). She said she can sit for about 30 minutes before she needs to shift positions. (*Id*.). She also testified that she does not have trouble standing in one spot because she moves regularly. (*Id*.) She further stated that she tries to keep active by sweeping the porch or vacuuming, although she occasionally has difficulty due to pain. (*Id*. at 33–34). She also testified that she was walk 20–30 minutes before needing to stop. (*Id*. at 35). She maintains she experiences some difficulty in picking things up, and requires two hands to life a gallon of milk. (*Id*.).

Plaintiff testified that she goes to church sometimes, and that she changed her hairstyle to a more manageable one due to the pain in her shoulders. (*Id*. at 36). When she holds her arms at shoulder-level or higher, Plaintiff stated that she has throbbing, stabbing, piercing pain. (*Id*.). As a result of her pain, Plaintiff said she cries a lot regarding the fact that she is limited in what she can do, as she was a person who worked most of her life. (*Id*. at 37). Plaintiff also testified that, because of the pain in her neck, she has headaches every day and that they can last 2–3 days. (*Id*. at 39–40).

    *2. Medical Evidence*

Plaintiff had a cervical MRI on July 30, 2007, which showed evidence of small disc protrusions, centrally, at C3-4, C4-5 and C5-6 as well as slight multilevel spondylosis and degenerative disc disease. (Tr. at 218).

Dr. Scot E. Reeg at the Center for Scoliosis and Spinal Surgery saw the Plaintiff on August 23, 2007, and noted that she had axial neck pain with no discomfort on her hands or arms. (*Id*. at 217). He noted an MRI showed some spondylosis over several segments but no real stenosis. (*Id*). Additionally, it showed disk bulging at C3-4, C4-5 and C5-6. (*Id*). Dr. Reeg also noted no obvious deficits in her arms or legs, a guarded but near normal cervical range of motion and tenderness over the C6 spinous process, for which he prescribed physical therapy. (*Id*.). Physical therapy records from September, 2007 note that Plaintiff's progress and tolerance of PT was good, but also note bilateral upper shoulder pain, decreased right shoulder strength and loss of ROM in bilateral rotation. (*Id*. at 209–15). An October 9, 2007 appointment with Dr. Reeg noted equal grip, rotator, hand and arm muscle strength bilaterally and diagnosed cervical degenerative disk disease with bulging disk. (*Id*. at 207–08). A November 15, 2007 record notes her 2+ years of back and neck pain and further that the myelogram was unremarkable with no appreciable abnormality and she was found to be neurologically intact. (*Id.* at 203). Dr. Reeg opined that Plaintiff was not a candidate for surgery. (*Id*).

Records from Bethel Family Medicine/ECU Physicians were submitted from February 11, 2004 through January 10, 2008. (*Id*. at 219–322). In August and September, 2005, Plaintiff was seen for numbness in her right hand, which was treated with a splint. (*Id*. at 226–235). On January 10, 2007, Plaintiff presented with, *inter alia*, neck pain and headaches, which was diagnosed as cervical disc degeneration and she was prescribed medication. (*Id*. at 245–46). On August 1,

6

2007, it was noted that Plaintiff's recent MRI showed disc herniations in her neck but they were not pressing on her spinal cord. (*Id*. at 304). She was referred to Dr. Reeg for an evaluation.

On January 10, 2008, Plaintiff was seen by Melissa O. Lewis, PA-C and was complaining of, *inter alia*, neck and joint aches and headaches. (*Id*. at 219–20). Although her cervical spine was not tender, her trapezoids were very tender bilaterally and very tight. (*Id*. at 220). She also had limited rotation of her head, more pronounced to the left side, and was unable to lift her arms completely above her head due to pain. (*Id*). Her coordination and reflexes were normal, and her strength was 5/5 in all extremities. (*Id*). She was diagnosed with cervical disc disorder and was prescribed pain medication. (*Id.* at 221–22). Plaintiff returned on February 20, 2008, stating that her pain was making her depressed, for which she was prescribed medication. (*Id*. at 345–47).

At a follow-up visit on March 28, 2008, Plaintiff continued to complain of neck pain (*Id*. at 348–51). It was noted that she was able to move her upper extremities adequately. (*Id*). She was diagnosed with cervical disc disease, a herniated cervical disc and depression, for which she was prescribed medication. (*Id*. at 350). On April 24, 2008, Plaintiff was again seen for chronic neck pain and diagnosed with cervical disc disease, a herniated cervical disc and depression, for which she was prescribed medication. (*Id*. at 343–44).

On May 20, 2008, Plaintiff was seen for chronic pain management, and her pain intensity was listed as 4 – discomforting. (*Id*. at 356). The pain was described as constant throbbing in her neck, lower back and shoulders. (*Id*.). She was assessed as having cervical disc herniation and degenerative disc disease and referred for a Tens unit. (*Id*. at 359). A follow-up visit on June 6, 2008 described pain as being 5 in intensity and being located in her right shoulder. (*Id*. at 360). The diagnosis remained unchanged and she was prescribed medication. (*Id*. at 363). Physical

Therapist Barbara Tyndall also examined Plaintiff on June 6, 2008, noting her severe neck pain as well as cervical pain and upper trapezoid paid, right more than left. (*Id*. at 365). Plaintiff noted her pain was 7/10 before treatment and 4/10 after treatment. (*Id*). Plaintiff was instructed on home use of Tens unit. (*Id*). Plaintiff was seen again on February 22, 2012. (*Id*. at 477). Her progress notes state a treating diagnosis of low back and cervical pain and impaired ROM in her trunk. Her pain intensity was noted to be a 7. (*Id*. at 478). She was prescribed a rehabilitation plan of 2 days per week for 60 minutes per day. (*Id*).

Dr. Joey P. Thomas of the Roanoke Valley Pain Center saw Plaintiff on September 28, 2009 and noted she complained of neck pain radiating to both shoulders and headaches. (*Id*. at 436). He diagnosed cervical discogenic disease with stiffness and associated muscle spasm, cervical facet joint syndrome, occipital headache as well as anxiety and nervousness. (*Id*. at 437). She was prescribed medication and referred for counseling. (*Id*). She as again seen on March 1, 2011 complaining of neck pain and shoulder pain. (*Id*. at 473). Her condition was assessed as cervical spondylosis without myelopathy and other unspecified disc disorder of the cervical region. (*Id*. at 474).

On January 27, 2012, Plaintiff was complaining of neck, shoulder, lower back and pelvic pain. (*Id*. at 486). Dr. Thomas assessed chronic pain syndrome with depression and anxiety and discussed treatment option with her. (*Id*. at 487–88). On February 13, 2012, Dr. Thomas noted Plaintiff's chief complaints were neck pain, bilateral shoulder pain and chronic low back pain. (*Id*. at 483–85). He found her to be a candidate for lumbar epidural steroid injections and possible facet nerve block injections. (*Id*).

Plaintiff was treated by Carolina Physical Therapy from December 28, 2009 through April

8

2, 2010. (*Id*. at 438–44).

Dr. Smita N. Sampat with Halifax Medical Specialists saw Plaintiff on January 27, 2010 and diagnosed cervical disc disease and depression. (*Id*. at 445–47).

Dr. Robert Gardner issued a RFC assessment of Plaintiff on March 13, 2008, finding that she had the following exertional limitations: occasionally lift/carry 50 pounds and frequently lift/carry 25 pounds; stand and/or walk about 6 hours in an 8 hour work day, with normal breaks; sit about 6 hours in an 8 hour work day, with normal breaks; and unlimited push/pull, except as indicated for lift/carry. (*Id*. at 329–36). It further noted that she had no postural, manupulative, visual, environmental or communication limitations. (*Id*. at 331–34). Dr. Janet Johnson-Hunter also issues a RFC, dated August 8, 2008, finding identical limitations and abilities. (*Id*. at 414–21). Dr. Johnson-Hunter noted that her physical exam was largely unremarkable and that her imaging did not indicate any major problems. (*Id*. at 421). She further observed that Plaintiff has diagnoses that could reasonably cause the limitations alleged but that her allegations were not fully credible, but that it was reasonable to limit her in consideration of her pain. (*Id*.).

A psychiatric review performed by Dr. Guiliana Gage on August 11, 2008 determined that any affective disorder in Plaintiff was not a severe impairment. (*Id*. at 422–435). Dr Gage found that Plaintiff had mild restrictions in daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentrations, persistence or pace; and no episodes of decompensation for an extended duration. (*Id*. at 432). Noting that Plaintiff did not actually allege any mental impairments, Dr. Gage found her diagnoses could reasonably cause the limitations alleged but that Plaintiff was only partially credible. (*Id.* at 434). Her condition improved after she was placed on Zoloft, and Plaintiff had not required additional treatment.

9

An MRI of the lumbar spine on April 13, 2010 was normal except that a small left paracentral peripheral disc bulge with defined disc herniation or mass effect on the exiting nerve root. The neural canal volume was normal. (*Id*. at 450). An MRI of the cervical disc on the same date were normal, except that the C3-4 disc area demonstrated evidence of disc herniation, with the left exiting nerve root canal having a mild degree of stenosis. (*Id*. at 452). Additionally, the C4-5 disc showed mild disc bulging without disc herniation or evidence of AP neural canal stenosis, and the exiting root areas were normal. (*Id*).

Dr. Jane Pope provided a consultative psychological evaluation of Plaintiff on June 5, 2010. (*Id*. at 454–59). Dr. Pope noted Plaintiff appeared anxious but that she was able to understand, retain and follow simple instructions most of the time over aa short period of time in a 1-to-1 setting. (*Id*). Dr. Pope further opined that it was unclear how Plaintiff could sustain attention over time to do repetitive tasks or to tolerate pressure and stress associated with day-to-day work activities. (*Id*). Dr. Pope determined Plaintiff had mild restrictions in the following areas: understand and remember simple instructions; carry out simple instructions; make judgments on simple work-related decisions; and understand and remember complex instructions. (*Id*. at 461). Dr. Pope also found that Plaintiff had moderate limitations carrying out complex instructions and in the ability to make judgments on complex work-related decisions, and noted that Plaintiff's focus varied at times. (*Id*). Plaintiff was also found to have mild limitations in interacting appropriately with the public, supervisors and coworkers, and in her ability to respond appropriately to usual work situations and to change in routing in a work setting. (*Id*. at 462). Finally, Dr. Pope stated that Plaintiff was preoccupied with physical and emotional issues. (*Id*).

Dr. Christopher E. Lacroix also performed a consultative physical examination on June

10

12, 2010. (*Id*. at 465–70). He noted her chief complaints were neck pain and low back pain. (*Id*. at 466). Her coordination, station and gait were normal, although the toe walk was stiff and painful. (*Id*. at 467). Her ROM was within normal limits, except that her rotation was limited to 60 degrees bilaterally and she experienced pain with movements. (*Id*. at 468). He also found that her cervical spine was extremely tender to palpitation in the midline and also around the trapezoids muscles, and that there was lumbar tenderness to palpitation in the spinous process and paraspinal muscles. (*Id*). His diagnosis was neck pain with slight decreased range of motion and possible left arm radiculopathy and low back pain with slight loss of lifting capacity. (*Id*). Dr. Lacroix issued the following functional assessment: 2-4 hours of standing/walking, with frequent breaks; able to lift 10 pounds frequently and 20 pounds occasionally; and infrequent fine manipulation restrictions with her left hand, based on a moderate loss of sensation. (*Id*. at 468–69).

*B. Is the RFC internally inconsistent?*

Plaintiff first contends that the RFC, which provides that she can perform light work with a limitation on standing/walking for 2–4 hours in an 8 hour work day, is inconsistent with the definition of light work. Under 20 C.F.R. § 404.1567(b), "light work" is defined as:

> (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §404.1567(b). Accordingly, by its definition, a light work position may require "a good deal of walking or standing" or it may require sitting most of the time. *Id*. However, Plaintiff's

11

RFC exceeds the limitations for sedentary work, which includes jobs that only require occasional standing and walking. SSR 96-9. Occasional is defined as generally no more than about 2 hours in and 8 hour day. *Id*. As Plaintiff's RFC permits 2–4 hours of standing or walking, she is capable of more than sedentary work.

While light work may involve a good deal of standing or walking, the ALJ specifically limited her RFC in this regard to no more than 2–4 hours in an 8 hour day. Moreover, the definition of light work includes positions where the majority of time is spent sitting, not standing or walking. Accordingly, certain light work jobs do not require standing or walking for most of the day. Consequently, the ALJ's assessment that Plaintiff is capable of light work with additional restrictions on standing and walking is not inconsistent with the definition of light work. Accordingly, this argument lacks merit as there is substantial evidence to support the ALJ's decision.

*C. Does the RFC include all of Plaintiff's impairments?*

Plaintiff next asserts that the ALJ failed to include all her impairments, *to wit.*, that the ALJ only found her limited as to her right upper extremity but should have found her limited in her ability to use both upper extremities. Specifically, she asserts that although the ALJ, giving weight to the findings of Dr. Lacroix, a consultative examiner, found her she was limited to frequent fine manipulations with her left hand, there is only one finding in the entire medical record where her left upper extremity had more severe symptoms than her right upper extremity. In several instances, Plaintiff maintains that the records establishes bilateral pain and numbness of her upper extremities and, in fact, certain records indicate more impairment in the right upper extremity than the left.

12

As noted in the medical evidence above, her impairments and complaints included both right and left upper extremities. For example:

> In August and September, 2005, Plaintiff was seen for numbness in her right hand, which was treated with a splint. (*Id*. at 226–235).
>
> On January 10, 2008, her trapezoids were very tender bilaterally and very tight. (*Id*. at 220).
>
> On May 20, 2008, Plaintiff's pain was described as constant throbbing in her neck, lower back and shoulders (*Id*. at 356).
>
> On June 6, 2008, her severe neck pain as well as cervical pain and upper trapezoid pain, right more than left, was noted. (*Id*. at 365).
>
> On September 28, 2009, records note she complained of neck pain radiating to both shoulders and headaches. (*Id*. at 436).

The isolated report of left upper extremity pain being more severe that in the right upper extremity is insufficient to provide a basis for the RFC determination limiting function in that area. Moreover, as the record contain several instances where Plaintiff reported and/or was found to have limiting effects in both upper extremities, there is not substantial evidence to support an RFC determination limiting manipulation of the left upper extremity alone. Without making a determination as to the limitations of her upper extremities, a finding that one is more limited than the other is unsupported by the medical evidence of record. Thus, Plaintiff correctly argues that there is not substantial evidence to support the ALJ's findings with respect to this part of her RFC. Accordingly, this issue forms a basis warranting remand.

### D. *Plaintiff's subjective reports of pain*

Plaintiff contends that the ALJ incorrectly assessed her credibility regarding her subjective

13

complaints of pain. "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

The regulations provide a two-step process for evaluating a claimant's subjective complaints of pain or other symptoms. 20 C.F.R. § 404.1529; *Craig*, 76 F.3d at 593-96. First, the ALJ must determine whether there is objective medical evidence showing the existence of a medical impairment that could be reasonably expected to produce the pain or alleged symptoms. 20 C.F.R. § 404.1529(b); *Craig*, 76 F.3d at 594. Second, the ALJ evaluates the intensity and persistence of the symptoms to determine how they limit the capacity for work. 20 C.F.R. 404.1529(c); *Craig*, 76 F.3d at 595. The ALJ evaluates the intensity and persistence of the symptoms and the extent to which they limit a claimant's capacity for work in light of all the available evidence, including the objective medical evidence. 20 C.F.R. 404.1529(c). At the second step, however, claims of disabling symptoms may not be rejected solely because the available objective evidence does not substantiate the claimant's statements as to the severity and persistence of the symptoms. *See Craig*, 76 F.3d at 595. Since symptoms can sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, all other information about symptoms, including statements of the claimant, must be carefully considered in the second part of the evaluation. 20 C.F.R. 404.1529(c)(2). The extent to which a claimant's statements about symptoms can be relied upon as probative evidence in determining whether the claimant is disabled depends on the credibility of the statements. SSR 96-7p, 1996 WL 374186, at *4. Ultimately, the ALJ's findings with regard to a claimant's credibility must "contain specific reasons . . . supported by evidence in the case record." *Id*. at *2.

14

Plaintiff notes that there is medical evidence supporting her assessment of pain. On July 30, 2007, an MRI of her cervical spine showed slight spondylosis and degenerative disc disease, with small disc protrusions at C3-4, C4-5 and C5-6. (*Id*. at 218). An MRI of the cervical spine on April 13, 2010 showed a C3-4 disc herniation extending to the origin of the right exiting root nerve. (*Id*. at 452). Other cervical discs were unremarkable, with no evidence of cord ischemia. (*Id*). On the same date, an MRI of the lumbar spine found minimal left disc bulging at L4-5, extending to the origin of the exiting nerve root. (*Id*. at 453). There was no evidence of other lumbar disc herniations. (*Id*).

The ALJ found that Plaintiff's medical conditions were capable of producing the pain and other symptoms alleged. However, she concluded that the underlying conditions were not so severe to support a finding that the pain was disabling. (*Id*. at 17). This finding is supported by the record. Plaintiff testified that she is able to sweep, vacuum and attend church. She further stated that she has had injections, physical therapy and prescription medication to manage the pain. Additionally, Dr. Johnson-Hunter concluded that Plaintiff has diagnoses that could reasonably cause the limitations alleged but that her allegations were not fully credible, but that it was reasonable to limit her in consideration of her pain. Dr. Gage also concluded that Plaintiff's diagnoses could cause the symptoms alleged but that Plaintiff was only partially credible.

Accordingly, the ALJ properly evaluated Plaintiff's reported impairments in light of the evidence of record. As Defendant argues, Plaintiff does not identify, nor is there any medical evidence of record, indicating Plaintiff's pain produces greater limitation than those contained in the RFC. Consequently, this assignment of error is without merit.

*D. Has the Commissioner satisfied its burden at Step Five?*

15

While a claimant has the burden at Steps 1–4, it is the Commissioner's burden at Step 5 to show that work the claimant is capable of performing is available. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)). At Step 5, the Commissioner must establish both that the claimant has the capacity to perform an alternative job, considering his or her age, education, skills, work experience, and physical shortcomings and also that such a job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

At Step 5, the Vocational Expert ("VE") identified the following light, unskilled positions that a person with Plaintiff's age, education, work history and RFC could perform: assembler of small parts; assembler II; sorter; and marker. (*Id*. at 19). Plaintiff argues that the ALJ erred at Step 5 by asserting that, even if her RFC were properly assessed and described, the jobs identified by the VE are not within the parameters of that RFC. Specifically, she contends that the jobs identified by the VE exceed the paramaters of her RFC as they require fine manipulation and cannot be performed in a seated position. She further contends that the sorter position requires more concentration than permitted by her RFC.

However, the Court need not determine whether the jobs identified by the VE were withing the parameters of Plaintiff's RFC as determined by the ALJ. Having concluded that the ALJ improperly assessed her RFC with respect to the limitations of her upper extremities, the jobs identified by the VE cannot be considered inasmuch as there are premised on an incorrect functional ability. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (stating that an ALJ errs when he or she makes findings at step five based on a VE's answer to a hypothetical question that did not reflect each limitation caused by a claimant's impairments); *Kemp v. Astrue*, No. 8:09-

3318, 2011 WL 4434030, at *11 (D.S.C. 2011) ("Because the Court has found the ALJ erred in determining Plaintiff's RFC, and an ALJ must use the RFC assessment to pose hypothetical questions to the vocational expert, the ALJ further erred in relying on the vocational expert's testimony in response to a hypothetical based on the flawed RFC assessment.").

Accordingly, the Defendant has failed to carry his burden at Step 5 of the sequential evaluation. Thus, this issue, too, warrants remand for further proceedings.

## IV. CONCLUSION

For the aforementioned reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE 19) be GRANTED, that Defendant's Motion for Judgment on the Pleadings (DE 21) be DENIED, and that the matter be remanded for further proceedings.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on October 17, 2013.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE